IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 22-cr-00064-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    ENDRIZZI DIESEL LLC,

    Defendant.

## PLEA AGREEMENT

The United States of America (the government), by and through Rebecca S. Weber, Assistant United States Attorney for the District of Colorado and Linda S. Kato, Special Assistant United States Attorney for the District of Colorado, and the defendant, Endrizzi Diesel LLC ("Endrizzi"), by and through its undersigned attorney, Kevin Fick, and through its authorized representative, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.    AGREEMENT

### A. Defendant's Plea of Guilty:

The defendant, through its authorized representative (set forth in Attachment A), agrees:

    (1)    to waive indictment and plead guilty to an Information charging a violation of Conspiracy to Violate the Clean Air Act, 18 U.S.C. § 371 and 42 U.S.C. § 7413(c)(2)(C);

    (2)    to waive certain appellate and collateral attack rights, as explained in detail below;

Court's Exhibit

1

(4) be liable for a total assessment of **$220,000**, to include a fine and an amount dedicated to a community service project, and with 25% of the total assessment to be held in abeyance and forgiven pending successful completion of Probation;

(5) agree to enter into a Corporate Compliance and Reporting Program (detailed in Attachment B) as a term of Probation.

## B. Government's Obligations:

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees to recommend a sentence of a **three-year** term of probation, a total assessment of **$220,000** as described above, and that the defendant enter into a Corporate Compliance and Reporting Program (detailed in Attachment B) as a term of Probation.

The parties understand that this agreement is not binding on the Court. The government further agrees not to bring other charges against the defendant's owners and employees based on information currently known to the United States Attorney's Office, District of Colorado concerning vehicle emissions tampering in violation of the Clean Air Act, 42 U.S.C. § 7413(c)(2)(C). Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to charge the defendant and/or its owners and employees.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a).

## C. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding

this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 371;

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 12; or

(3) the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by

the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

## II.   ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of 18 U.S.C. § 371 and 42 U.S.C. § 7413(c)(2)(C) are as follows:

### 18 U.S.C. § 371

*First:* The defendant agreed with at least one other person to violate the law.

*Second:* One of the conspirators engaged in at least one overt act furthering the conspiracy's objective.

*Third:* The defendant knew the essential objective of the conspiracy.

*Fourth:* The defendant knowingly and voluntarily participated.

*Fifth:* There was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged. *See* 10th Cir. P.J.I. § 2.19.

## 42 U.S.C. § 7413(c)(2)(C)

*First:* The defendant, a person,[1]

*Second:* Tampered with or rendered inaccurate;

*Third:* A monitoring device or method;

*Fourth:* Required under the Clean Air Act;

*Fifth:* The defendant acted knowingly.[2]

### III.   STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count One of the Information is a term of five years of probation, a maximum fine of $500,000 or twice the amount of the gross gain or twice the amount of the gross loss resulting from the offense, and a $400 mandatory victim's fund assessment fee.

### IV.   STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

---

[1] "The term 'person' includes an individual, corporation, partnership, association, State, municipality, political subdivision of a State, and any agency, department, or instrumentality of the United States and any officer, agent, or employee thereof." 42 U.S.C. § 7602(e).
[2] *See United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998).

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

Endrizzi Diesel ("ENDRIZZI") is a diesel repair shop located in Bolivar, Missouri. Company E.D. is a diesel repair shop located in Windsor, Colorado and co-owned and operated by Person A.

From in or around January 2017 through in or around December 2020, ENDRIZZI disabled emissions control components on its customers' heavy-duty diesel vehicles. In order to complete the "delete" jobs on these vehicles, ENDRIZZI conspired with Company E.D. to tamper with the "on board diagnostic" systems (OBDs)[3] on these vehicles. This tampering is frequently referred to as "tuning" an OBD. One purpose for "tuning" an OBD is to allow the vehicles to continue to seemingly operate normally while the emissions control system is disabled, which reduces the high costs associated with maintaining or repairing components of the emissions control systems on heavy-duty diesel trucks. However, as a consequence, tampered vehicles spew substantially more deleterious pollutants such as nitrogen oxides ($NO_x$), carbon monoxide (CO), non-methane hydrocarbons (NMHC) and particulate matter (PM) into the air, presenting a risk to the environment and public health. Tests conducted by EPA have found that

---

[3] OBDs are monitoring devices required under the Clean Air Act to be installed on vehicles to monitor the vehicles' emissions control systems to ensure they are functioning properly. If an OBD detects a malfunction in the emissions control system, it will illuminate a "malfunction indicator light" (MIL) on the vehicle's dashboard and record a "diagnostic trouble code" (DTC) in the vehicle's computer, which facilitates the detection and diagnosis of malfunctions. Disabling the MIL and DTC functions serves to conceal the malfunction caused by tampering. If the malfunction is serious and remains unresolved, the OBD may also cause some vehicles to "derate" or go into "limp mode," that is, reduce the vehicle's maximum speed to incentivize the operator to repair the malfunction.

Page 6 of 14

completely deleting a diesel truck's emissions controls can increase the truck's tailpipe emissions of $NO_x$ by a factor of approximately 310 times, tailpipe CO by a factor of approximately 120 times, tailpipe NMHC by a factor of approximately 1,100 times, and tailpipe PM by a factor of approximately 40 times.

Company E.D., Person A, and others associated with Company E.D. would instruct individuals at ENDRIZZI to connect a laptop computer to the vehicle's OBD. Through a remote connection, using a program called "Team Viewer," individuals at Company E.D. located in Colorado, would run software programs to reprogram or "tune" the vehicle's OBD. These programs would tamper with, render inaccurate, and disable the monitoring functions of the OBDs so they would no longer detect malfunctions in the emissions control systems.

ENDRIZZI received instruction from Company E.D. on how to remove or alter hardware components on the emissions control systems of vehicles. ENDRIZZI routinely removed or altered hardware components on customers' vehicles, including hollowing out or removing the diesel particulate filter ("DPF") and/or the selective catalytic reduction ("SCR") system and removing or blocking off the exhaust gas recirculation ("EGR").

Early on, Company E.D. asked the owner of ENDRIZZI to sign a waiver acknowledging that Company E.D.'s products were "intended for off-road use in competition only," and "not to be used on public roads or highways."[4] The owner of ENDRIZZI signed the waiver, which he believed was "kept on file" with Company E.D.

---

[4] Company E.D. apparently asserted an invalid claim that motor vehicles converted to off-road competition-only use are exempt from the Clean Air Act. Any justification for the tampering that the co-conspirators might assert based on this rationale is irrelevant here because the tampered vehicles were plainly operated on public roads and were never intended for competition-only use.

ENDRIZZI confirmed that the vehicles it conspired with Company E.D. to delete were *not* "off-road vehicles" and signing the waiver was "just part of the game."

In furtherance of the conspiracy and to effect its objects, coconspirators, including ENDRIZZI, Company E.D., Person A, and others, committed the following overt acts:

ENDRIZZI engaged Company E.D. to tamper with, or tune, a vehicle's OBD by filling out an "ECM[5] Form" that provided key parameters for the vehicle, such as the engine serial number, the truck make and model, the VIN, the tire brand and size, and the turbo type. The information on this form was used by Company E.D. to tune the OBD to prevent it from monitoring for and detecting malfunctions in the emissions control system. Many of these "ECM Forms" directed Company E.D. to "delete" the vehicle, using language such as "DPF and DEF[6] Delete" or "EGR Delete." An individual at ENDRIZZI then faxed the ECM Form to Company E.D. in Colorado.

After receiving the ECM Form, individuals at Company E.D. would contact individuals at ENDRIZZI and instruct them to plug a laptop computer, usually purchased from Company E.D., into the vehicle's OBD port. Individuals at Company E.D. then tuned or reprogrammed the OBD, tampering with and rendering ineffective its monitoring function.

For each tampered vehicle, Company E.D. sent an invoice to ENDRIZZI charging approximately $2,000 to $2,300 (and, for some vehicles, up to approximately $4,000).

---

[5] An "electronic control module" (ECM) is essentially an on-board computer that receives inputs from various sensors and sends outputs through activators to control engine, vehicle, or equipment functions, including emission control components. OBDs operate as a system within the ECM.

[6] "DEF" stands for "diesel exhaust fluid," which is injected into a vehicle's SCR to reduce NOx emissions by chemically converting exhaust gas into nitrogen and water. "DEF delete" ostensibly refers to tampering with the SCR.

Company E.D. typically used the code language "ECM Repair" on the invoice to disguise the line item for emissions control system tampering. For vehicles owned by customers, ENDRIZZI typically charged an additional $500 in excess of Company E.D.'s charges for the tampering, which represented ENDRIZZI's profit for each vehicle.

In late 2018, individuals at ENDRIZZI learned from individuals at Company E.D. that federal agents had searched Company E.D.'s premises. Company E.D. continued to tamper with OBDs after the search occurred. ENDRIZZI opted to text pictures of each ECM Form requesting a delete instead of faxing it, based on the belief that texts were harder to trace than faxes.

Between in or around January 2017 and December 2020, ENDRIZZI paid Company E.D. over $149,000 to disable the OBDs on the following 60 commercial motor vehicles containing heavy-duty diesel engines. Each of these vehicles was required by the Clean Air Act and by regulation to have a functioning OBD installed and maintained.

| E.D. Invoice Number | Engine Manu-facturer | Engine Serial Number | Engine Year | Engine Family | Price E.D. Charged |
|---|---|---|---|---|---|
| 134167 | Cummins | 79523732 | 2011 | BCEXH0912XAP | $2,000 |
| 134445 | Mercedes | S0166225 | 2012 | CDDXH14.8EED | $4,500 |
| 134886 | Cummins | 79609042 | 2012 | CCEXH0912XAP | $2,000 |
| 134906 | Cummins | 79609041 | 2012 | CCEXH0912XAP | $2,000 |
| 134988 | Cummins | 79609052 | 2012 | CCEXH0912XAP | $2,000 |
| 135117 | Cummins | 79636622 | 2013 | | $2,000 |
| 135157 | Cummins | 79711439 | 2014 | | $2,000 |
| 135244 | Cummins | 79507803 | 2011 | BCEXH0912XAP | $2,300 |

| | | | | | |
|---|---|---|---|---|---|
| 135314 | Cummins | 79674841 | 2013 | | $2,300 |
| 135461 | Cummins | 79664045 | 2013 | | $2,300 |
| 135723 | Cummins | 79609054 | 2012 | CCEXH0912XAP | $2,300 |
| 135761 | Cummins | 79841648 | 2015 | | $2,300 |
| 135865 | Cummins | 79603513 | 2012 | CCEXH0912XAP | $2,300 |
| 135987 | Cummins | 79674165 | 2013 | | $2,300 |
| 136250 | Cummins | 76152204 | 2020 | | $2,300 |
| 136377 | Cummins | 60817596 | 2016 | | $2,300 |
| 136626 | Cummins | 79619967 | 2012 | CCEXH0912XAP | $2,300 |
| 136680 | Cummins | 79674467 | 2013 | | $2,300 |
| 137055 | PACCAR | Y030607 | 2013 | | $4,000 |
| 137310 | Cummins | 79474690 | 2011 | BCEXH0912XAP | $2,300 |
| 137327 | Cummins | 60816454 | 2016 | | $2,300 |
| 137429 | Cummins | 79637825 | 2013 | | $2,300 |
| 137515 | Cummins | 79552703 | 2012 | CCEXH0912XAP | $2,300 |
| 137822 | Cummins | 79730681 | 2014 | | $2,300 |
| 137881 | Cummins | 79742516 | 2014 | | $2,300 |
| 138380 | Cummins | 79555008 | 2012 | CCEXH0912XAP | $2,300 |
| 138392 | Cummins | 79486735 | 2011 | BCEXH0912XAP | $2,300 |
| 138467 | Cummins | 79528279 | 2011 | BCEXH0912XAP | $2,300 |
| 138619 | Cummins | 79543347 | 2012 | CCEXH0912XAP | $2,300 |
| 138648 | Cummins | 79458900 | 2011 | BCEXH0912XAP | $2,300 |
| 138695 | Cummins | 79696186 | 2013 | | $2,300 |
| 138908 | Cummins | 79500622 | 2011 | BCEXH0912XAP | $2,300 |

| 138930 | Cummins | 79548965 | 2012 | CCEXH0912XAP | $2,300 |
| --- | --- | --- | --- | --- | --- |
| 140450 | Cummins | 79638356 | 2013 | | $2,300 |
| 140495 | Cummins | 79629095 | 2012 | CCEXH0912XAP | $2,300 |
| 140518 | Cummins | 79566063 | 2012 | CCEXH0912XAP | $2,300 |
| 140778 | PACCAR | Y030482 | 2013 | | $3,800 |
| 140970 | Cummins | 79516615 | 2011 | BCEXH0912XAP | $2,300 |
| 140988 | Cummins | 79932302 | 2016 | | $2,300 |
| 141121 | Cummins | 79755107 | 2014 | | $2,300 |
| 141362 | PACCAR | Y080397 | 2015 | | $3,800 |
| 141535 | Cummins | 75016948 | 2013 | | $2,300 |
| 141636 | Cummins | 79848693 | 2015 | | $2,300 |
| 141728 | Cummins | 79470055 | 2011 | BCEXH0912XAP | $2,300 |
| 141804 | PACCAR | JD456030 | 2016 | | $3,800 |
| 141882 | Cummins | 79742480 | 2014 | | $2,300 |
| 141929 | Cummins | 79687920 | 2013 | | $2,300 |
| 141970 | PACCAR | Y080788 | 2015 | | $3,800 |
| 141988 | Cummins | 79737987 | 2014 | | $2,300 |
| 142213 | Cummins | 79792441 | 2014 | | $2,300 |
| 142365 | Cummins | 79953086 | 2016 | | $2,300 |
| 142383 | Cummins | 79666329 | 2013 | | $2,300 |
| 142459 | Cummins | 79598735 | 2012 | CCEXH0912XAP | $2,300 |
| 142463 | PACCAR | Y072533 | 2015 | | $3,800 |
| 142507 | PACCAR | Y051757 | 2014 | | $3,800 |
| 142604 | Cummins | 79783889 | 2014 | | $2,300 |

| 142609 | Cummins | 80004013 | 2017 |              | $2,300 |
|--------|---------|----------|------|--------------|--------|
| 142631 | Cummins | 79992842 | 2017 |              | $2,300 |
| 142720 | Cummins | 79515378 | 2011 | BCEXH0912XAP | $2,300 |
| 142969 | Cummins | 79875837 | 2015 |              | $2,300 |

### V.     ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below. The parties further understand that

      a)    Under Section § 2Q1.2(a), the base offense level is **8**.

      b)    Because the offense resulted in an ongoing, continuous, or repetitive emission of a pollutant into the environment, a **6**-level increase applies. *See* § 2Q1.2(b)(1)(A).

      c)    There are no victim-related, role-in-offense, obstruction, grouping, and/or multiple-count adjustments.

- d) The adjusted offense level is **14**.

- e) The parties agree that a 2-level decrease for acceptance of responsibility applies. See § 3E1.1(a). The resulting total offense level is **12**.

- f) Because the defendant is an organization, the advisory guideline range for imprisonment is not relevant.

- g) Because the defendant is an organization, the provisions of Chapter 8 apply in the determination of a fine. Pursuant to § 8C2.1, the fine guidelines set forth in §§ 8C2.2 through 8C2.9 do not apply to offenses involving the environment under 2Q. Thus, pursuant to § 8C2.10, the total fine referenced in this Agreement satisfies the provisions of 18 U.S.C. §§ 3553 and 3572.

- h) Pursuant to § 8B1.3, community service may be ordered as a condition of probation where such community service is reasonably designed to repair the harm caused by the offense.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VI.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor

the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 3-31-22

James Endrizzi
Authorized Representative
Endrizzi Diesel

Date: 3-31-22

Kevin Fick
Attorney for Defendant

Date: 3/31/2022

Rebecca S. Weber
Assistant U.S. Attorney

Date: 3/31/22

Linda S. Kato
Special Assistant U.S. Attorney